UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

QUAWNRICO PELE ONEAL #447377,

        Plaintiff,                              Hon. Paul L. Maloney

v.                                            Case No. 1:14-cv-409

SEAN RYSKE, et al.,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

       This is a civil rights action brought *pro se* by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff is an inmate with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility.

       Plaintiff claims that, on October 2, 2013,[1] he was forcibly extracted from his cell by defendant Sean Ryske and a number of Emergency Response Team (ERT) officers. (Amended Complaint at ¶¶ 9-15, Dkt. 17, Page ID 72). Plaintiff alleges that before he was extracted from his cell, Ryske sprayed him with a chemical agent without giving him a chance to be restrained and removed from his cell. (*Id.* at ¶¶ 12-13). Once in the hallway, the ERT officers restrained plaintiff, tasered him, and kicked him about his body. (*Id.* at ¶ 17). Ryske sprayed a chemical agent into plaintiff's mouth, nose, and

---

[1] The amended complaint states that the incident occurred on October 2, 2014. (Amended Complaint at ¶ 9, Dkt. 17, Page ID 72). This is a typographical error, as the original complaint, which was filed April 14, 2014, indicates the year was 2013. (Complaint at 5, Dkt. 1, Page ID 5).

eyes, noting it would "teach" him about "whining and filing anymore grievances." (*Id.* at ¶ 18). Plaintiff claims that the incident was video recorded. (*Id.* at ¶ 19).

Plaintiff alleges that, thereafter, the ERT officers took him to the showers, but would not let him wash his body or rinse the chemical agent out of his eyes, mouth and nose. (*Id.* at ¶¶ 24-25). While plaintiff was in the shower, a nurse – defendant Unknown Balzack – refused him medical treatment, even though she was aware of his wounds. (*Id.* at ¶ 27). In addition, and despite his requests to do so, Balzack refused to check plaintiff's restraints or give plaintiff his prescribed asthma inhaler. (*Id.* at ¶¶ 27-28). The ERT officers eventually took plaintiff back to his cell. (*Id.* at ¶ 29).

Later that day, according to plaintiff, defendant Robert Sheldon came to plaintiff's cell to check his restraints, which were digging into plaintiff's wrists and causing injury, and to inspect his wounds, but Sheldon refused to treat him. (*Id.* at ¶¶ 30-31).[2] Sheldon would not give plaintiff his prescribed inhaler. (*Id.* at ¶ 30).

Plaintiff alleges that he was left in his cell in restraints for three days without food and without the ability to use the toilet. (*Id.* at ¶ 32). Plaintiff was forced to urinate and defecate on himself. (*Id.*).

Plaintiff claims that the defendants violated his rights under the First and Eighth Amendments, as well as his equal protection rights. He seeks declaratory relief, monetary damages, and costs.

---

[2]The amended complaint apparently misspells defendant Sheldon's name as "Shelton." The Court is using the name as spelled in defendant's motion for summary judgment.

This matter is before the Court on defendants Ryske and Sheldon's motion for summary judgment (Dkt. 20) based on the affirmative defense of failure to exhaust administrative remedies, 42 U.S.C. § 1997e(a). Plaintiff has filed a response. (Dkt. 23). This motion was referred to the undersigned judicial officer by the Honorable Paul L. Maloney for report and recommendation under 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth herein, I recommend that the motion for summary judgment be granted. I also recommend that plaintiff's claims against defendant Unknown Balzack be dismissed for failure to achieve service of process.

## Applicable Standards

### A.     Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the

moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *see Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012); *Cockrel*, 270 F.2d at 1056. Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

**B.  Standards Applicable to the Affirmative Defense of Failure to Exhaust Remedies**

Defendants have asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies. A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust

available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734. "This requirement is a strong one. To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[ ] believes the procedure to be ineffectual or futile." *Napier v. Laurel County, Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) (internal quotations and citations omitted).

In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. The burden is on defendant to show that plaintiff failed to properly exhaust his administrative remedies. The Supreme Court reiterated that "no unexhausted claim may be considered." 549 U.S. at 220. The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims. 549 U.S. at 219-24.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones v. Bock*, 549 U.S. at 218-19. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper

exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009). Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a section 1983 action in federal court. 548 U.S. at 90-93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011); *see* 42 U.S.C. § 1997e(a). The procedural bar does not apply where the State declines to enforce its own procedural rules. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324–25 (6th Cir. 2010).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures.[3] In *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies. *Id.* at 470.

Policy Directive 03.02.130 is not limited to the requirement that the individual being grieved be named in the Step I grievance. The following is an overview of the grievance process. Inmates must first attempt to resolve a problem within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his control. *Id.* at ¶ P. If the mandatory pre-grievance attempt at resolution is unsuccessful, the inmate may proceed to Step I of the grievance process

---

[3] A copy of the policy directive is found in the record. (*See* Dkt. 21-2, Page ID 99-105).

and submit a completed grievance form within five business days of the attempted resolution. *Id.* The Policy Directive also provides the following directions for completing Step I grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the *facts* involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). Thus, where an individual is not named in the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual is mentioned for the first time during an appeal of a denial of a grievance, the claims against that individual are not properly exhausted. *See Ketzner v. Williams*, No. 4:06-cv-73, 2008 WL 4534020, at * 16 (W.D. Mich. Sept. 30, 2008) (collecting cases); *accord Sullivan v. Kasajaru*, 316 F. App'x at 470.

The inmate submits the grievance to a designated grievance coordinator who makes an initial determination whether it should be rejected under MDOC policy or assigns it to a respondent. P.D. 03.02.130 at ¶¶ W, X. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by the policy. The Step II respondent is generally the warden or the warden's designee. *Id.* at ¶ DD. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ FF. The Step III appeal

form must be sent to the Grievance and Appeals Section within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the Step III respondent. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ S. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing." *Id.*

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process. The Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier*, 636 F.3d at 224. An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see Booth v. Churner*, 532 U.S. at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

## **Proposed Findings of Fact**

The following facts are beyond genuine issue. Plaintiff is an inmate with the MDOC at the Ionia Correctional Facility. He has filed at least fifteen grievances through Step III. (Dkt. 21-3, Page ID 108-11). Eight of the fifteen grievances were filed prior to the October 2, 2013, date in which the incidents in the complaint allegedly began – the Step I receipt dates for these eight grievances range from August 25, 2009, to September 4, 2013. (*Id.*).

Three of the other seven grievances relate in some way to the alleged October 2, 2013, incident that forms the basis of the amended complaint, but they are each untimely:

1. Grievance ICF-13-12-2317-28e relates to the October 2, 2013, incident included in the amended complaint, and it names defendant Ryske and other officials not named as defendants. This grievance was untimely filed at Step I. While the grievance indicates that it was authored on October 7, 2013, it was not received by the Step I grievance coordinator until December 4, 2013. (Dkt. 21-3, Page ID 132-36).

2. Grievance ICF-13-12-2316-28e relates to the October 2, 2013, incident included in the amended complaint, and it names defendant Ryske and unnamed members of the ERT (Emergency Response Team). This grievance was untimely filed at Step I. While the grievance indicates that it was authored on October 7, 2013, it was not received by the Step I grievance coordinator until December 4, 2013. (Dkt. 21-3, Page ID 142-46).

3. Grievance ICF-13-12-2314-28e relates to the October 2, 2013, incident included in the amended complaint, but it names only "Nurse Ballzak" – presumably defendant Balzack who has not been served. This grievance was untimely filed at Step I. While the grievance indicates that it was authored on October 2, 2013, it was not received by the Step I grievance coordinator until December 4, 2013. (Dkt. 21-3, Page ID 127-31).

Plaintiff stated in his Step II appeals that his grievances should be considered timely because he sent them to the MDOC's "Office of Legal Affairs." (Dkt. 21-3, Page ID 128, 133, 143). The decisions rejecting the grievances as untimely were upheld at Steps II and III of the grievance process. (*Id.*, Page ID 127, 129, 132, 142, 144).

The other four grievances either involve matters unrelated to the allegations in the amended complaint or cite officials other than the named defendants:

1. Grievance ICF-13-12-2315-28e, with an incident date of October 7, 2013, alleged that a nurse with the last name Kurnk denied plaintiff medical care for injuries he alleged he sustained from the October 2, 2013, incident. This grievance was untimely filed at Step I. While the grievance indicates that it was authored on October 10, 2013, it was not received by the Step I grievance coordinator until December 4, 2013. (Dkt. 21-3, Page ID 113-16).

2. Grievance ICF-13-12-2243-22f, authored on November 18, 2013, with an incident date of November 14, 2013, cites defendant Ryske and other officials and it relates to allegations plaintiff was denied exercise and yard privileges. This grievance was received by the Step I grievance coordinator on November 22, 2013, and it was pursued through Step III. (Dkt. 21-3, Page ID 122-26).

3. Grievance ICF-13-12-2244-03e, authored on November 20, 2013, with an incident date of November 16, 2013, alleged that defendant Ryske sealed the food slot in plaintiff's cell. This grievance was received by the Step I grievance coordinator on November 22, 2013, and it was pursued through Step III. (Dkt. 21-3, Page ID 137-41).

4. Grievance ICF-13-12-2242-22f, authored on November 20, 2013, with an incident date of November 17, 2013, related to a haircut plaintiff alleges he was denied in violation of his rights under the Eighth Amendment. It is unclear who plaintiff believes is responsible for the alleged denial of a haircut. This grievance was received by the Step I grievance coordinator on November 22, 2013, and it was pursued through Step III. (Dkt. 21-3, Page ID 117-21).

**Discussion**

### A.     Plaintiff's Failure to Exhaust Administrative Remedies.

Defendants Ryske and Sheldon have raised the affirmative defense that plaintiff did not properly exhaust his administrative remedies against them as required by 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Woodford*, 548 U.S. at 85. "[N]o unexhausted claim may be considered." *Jones v. Bock*, 549 U.S. at 220. Plaintiff did not properly exhaust any claim against defendants.[4] I find that defendants have carried their burden on the affirmative defense and are entitled to dismissal of all of plaintiff's claims.

Plaintiff's claim that the defendants made the grievance process "unavailable" to him due to their misconduct (Pltf. Brief at 3-5, Dkt. 23, Page ID 152-54) does not defeat summary judgment in this case. Plaintiff did not raise this claim at the time his Step I grievances were denied as untimely. Instead, he asserted that he had timely filed the grievances when he sent them to the MDOC's "Office of Legal Affairs." (*See* Dkt. 21-3, Page ID 128, 133, 143).[5]

---

[4]A prisoner cannot file his lawsuit and then exhaust his administrative remedies after-the-fact. *See Garren v. Prisoner Health Servs.*, No. 11-14650, 2012 WL 4450495, at * 2 (E.D. Mich. Aug. 6, 2012); *Rhinehart v. Scutt*, No. 2-10-cv-10006, 2011 WL 679699, at * 5 (E.D. Mich. Jan. 14, 2011); *Ross v. Duby*, No. 1:09-cv-531, 2010 WL 3732234, at * 1 (W.D. Mich. Sept. 17, 2010).

[5]In Grievances ICF-13-12-2316-28e and ICF-13-12-2317-28e, plaintiff made an allegation that unidentified "unit staff" were "trashing his complaints." (Dkt. 23-1, Page ID 143). Notably, he did not identify these "complaints," nor did he identify anyone who was allegedly involved, including defendant Ryske.

Plaintiff has filed no less than fifteen grievances since August 25, 2009. (Dkt. 21-3, Page ID 108-11). All but four of these appear to have been timely filed with the Step I grievance coordinator. Even after the alleged October 2, 2013, incident with defendant Ryske, plaintiff filed at least three grievances in a timely fashion with the grievance coordinator (*see* Dkt. 21-3, Page ID 120, 125, 140), as is required by the MDOC's grievance procedures. (*See* P.D. 03.02.130 at ¶¶ V-X, Page ID 102). This shows that plaintiff knew how to properly file grievances and he was able to do so. *See Wills v. Barber*, No. 1:12-cv-434, 2014 WL 4059766, at *2 (W.D. Mich. Aug. 15, 2014) (Argument that prison staff obstructed plaintiff's use of the grievance procedures was "untenable" given, among other things, his "prolific use of the grievance system[.]").

Moreover, in two of those three post-October 2, 2013, grievances, plaintiff raised allegations specifically against defendant Ryske (*see* Dkt. 21-3, Page ID 125 (alleging Ryske was denying him exercise and yard privileges); *id.*, Page ID 140 (alleging that Ryske sealed the food slot in his cell)), the same person whose actions he now claims made the grievance process "unavailable" to him. This belies his claims that he was unable to timely file his other grievances with the grievance coordinator.

His allegations regarding the "unavailability" of the grievance process are also internally inconsistent. Plaintiff now claims that an "unknown officer" instructed him to send his grievances "to the MDOC Internal Affairs Office." (Pltf. Brief at 4, Page ID 153; Dkt. 23-3, Page ID 182). But in response to each of the denials of his Step I grievances for untimeliness plaintiff stated that he sent his grievances to the MDOC's "Office of Legal Affairs." (Dkt. 21-3, Page ID 128, 133, 143). The documents are

-13-

stamped as having been received by the "Office of Legal Affairs." (*Id.*, Page ID 130, 135, 145). The Office of Legal Affairs is not part of the Internal Affairs Division. The Office of Legal Affairs is part of the Budget and Operations Division. *See* http://www.michigan.gov/documents/corrections/MDOC_Org_Chart_No_Names_ June_14_2010_PORTRAIT_328559_7.pdf (last visited Mar. 10, 2015); *see also* http://www.michigan.gov/corrections/0,4551,7-119-1438_58687---,00.html (last visited Mar. 10, 2015).

The MDOC's policy directive does not authorize the filing of Step I grievances with the Office of Legal Affairs. (Dkt. 21-2, ¶ Q, Page ID 101). No reasonable trier of fact could accept plaintiff's belated assertion that he sent his grievances to "Internal Affairs," because it is completely undermined by all contemporaneous records. I find that defendants Ryske and Sheldon have carried their burden on the affirmative defense, and that they are entitled to dismissal of all plaintiff's claims.

### B. Lack of Service of Process for Defendant Unknown Balzack.

All plaintiff's claims against defendant Unknown Balzack should be dismissed for failure to achieve service of process. This defendant has never been served with process or otherwise appeared during the eleven months this lawsuit has been pending. Accordingly, I recommend that all plaintiff's claims against defendant Balzack be dismissed without prejudice under Rule 4(m) of the Federal Rules of Civil Procedure. This report and recommendation serves as plaintiff's notice of impending dismissal. *See Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 623 (6th Cir. 2004); *accord Reynosa v. Schultz*, 282 F. App'x 386, 393-94 (6th Cir. 2008).

**Recommended Disposition**

For the foregoing reasons, I recommend that defendants Ryske and Sheldon's motion for summary judgment be granted and that plaintiff's claims against them be dismissed without prejudice. I also recommend that all plaintiff's claims against defendant Balzack be dismissed without prejudice, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, for lack of service of process. This report and recommendation serves as plaintiff's notice of impending dismissal

Respectfully submitted,

Date:  March 10, 2015         /s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.,* 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).